UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DIEZ DOE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ISLAMIC REPUBLIC OF IRAN, *et al.*,**<br><br>**Defendants.** | **No. 26-cv-2481 (TNM/GMH)** |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Diez Doe brings this case against the Islamic Republic of Iran, the Islamic Revolutionary Guard Corps ("IRGC"), and the Iranian Ministry of Intelligence and Security ("MOIS") pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(a)(1).[1,2] *See* Complaint ¶¶ 1, 13. Presently pending before the Court is Doe's motion requesting that the Court authorize alternative service on the IRGC by email. ECF No. 7. Because Section 1608(a) of the FSIA does not permit service by email and provides the sole means of service on a foreign state or political subdivision of a foreign state, such as the IRGC, Plaintiff's motion for alternative service is denied.

---

[1] The documents relevant to this Memorandum Opinion and Order are (1) Plaintiff's Complaint, ECF No. 1; (2) Plaintiff's Motion for Alternative Service, ECF No. 7; (3) Notice of Supplemental Authority, ECF No. 9; and (4) Notice of Filing Corrected Exhibit, ECF No. 10. Citations to page numbers reflect the pagination assigned by the Court's CM/ECF system.

[2] Plaintiff also names 20 unidentified individuals who "are officials, employees, or agents of Iran, the IRGC, or MOIS" and 30 unidentified individuals who acted "as agents, operatives, or compensated proxies of Iran, the IRGC, or MOIS" as Defendants. Complaint ¶¶ 11-12. The docket does not reflect that any of those Defendants have been served and Plaintiff's motion does not seek alternative service as to them.

# I. ANALYSIS

## A. Foreign State or Political Subdivision of a Foreign State

The means of service permitted by the FSIA depend on whether the defendant is a "foreign state or political subdivision of a foreign state" or an "agency or instrumentality of a foreign state." 28 U.S.C. § 1608(a), (b). Section 1608(a) governs service on a foreign state or political subdivision of a foreign state; Section 1608(b) governs service on an agency or instrumentality of a foreign state. *Id.* So, to evaluate whether service has been properly effected under the FSIA, the Court must "categorize each defendant to determine whether it must be served under § 1608(a) or § 1608(b)" and then "determine whether Plaintiffs' attempts to effectuate service satisfied the applicable requirements." *Holladay v. Islamic Republic of Iran*, 406 F. Supp. 3d 55, 58 (D.D.C. 2019).

To determine whether an entity is a foreign state or political subdivision of a state, or if it is instead an agency or instrumentality, a court considers whether its "core functions . . . are governmental" or "commercial." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003). If governmental, the entity "is considered the foreign state itself." *Id.* Because "'the powers to declare and wage war' are among the 'necessary concomitants' of sovereignty," *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153 (D.C. Cir. 1994) (quoting *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 318 (1936)), "[a] nation's armed forces are clearly on the governmental side" of the equation. *Roeder*, 333 F.3d at 234*; see also Transaero*, 30 F.3d at 153 ("[A]rmed forces are as a rule so closely bound up with the structure of the state that they must in all cases be considered as the 'foreign state' itself.").

At this point, it is beyond dispute that "[t]he IRGC, as a branch of the Iranian Armed Forces, performs a military function." *Holladay*, 406 F. Supp. 3d at 59. Accordingly, case after case in

this Court has found that the IRGC is a political subdivision of Iran or the state itself.[3] *See, e.g.*, *Doe v. Islamic Republic of Iran*, No. 26-cv-1557, 2026 WL 2755470, at *1–2 (D.D.C. Sep. 17, 2026); *Estate of Solorio v. Islamic Republic of Iran*, No. 23-cv-2660, 2026 WL 2099034, at *2 (D.D.C. July 21, 2026); *Dehnoushi v. Islamic Republic of Iran,* No. 25-cv-2109, 2026 WL 1786419, at *1–2 (D.D.C. June 22, 2026); *Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 312–13 (D.D.C. 2022); *Estate of Fishbeck v. Islamic Republic of Iran*, No. 18-cv-2248, 2021 WL 6808189, at *2 (D.D.C. Mar. 1, 2021); *Estate of Hartwick v. Islamic Republic of Iran*, No. 18-cv-1612, 2020 WL 12968924, at *2 (D.D.C. Oct. 10, 2020). While Plaintiff claims that the IRGC's status as a "parallel military institution to Iran's regular armed forces" exempts it from this category, "the existence of another Iranian military force [in addition to the regular army] does not make IRGC any less one." *Doe*, 2026 WL 2755470, at *2; *see also Nahadi v. Islamic Republic of Iran*, No. 23-cv-601, 2025 WL 1207074, at *3 (D.D.C. Apr. 25, 2025) (concluding that the IRGC is a foreign state because it is a parallel military institution that is "responsible for regime security").

Plaintiff also argues that the IRGC should not be classified as a foreign state because its economic activities make its "core functions" commercial, rather than military. ECF No. 7 at 13–21. While the IRGC certainly controls a vast commercial empire alongside its military activities, *see id.* at 13-16, "the Court's inquiry focuses on IRGC's 'core' function," and, as another judge of this Court recently found when faced with an almost identical record,[4] Plaintiff "has not shown

[3] Plaintiff cites the recent orders in *Hutan* and *John Farshid Doe*, which stated, without explanation, that Section 1608(b)(3)(C) governs service of the IRGC. ECF No. 7 at 21; Minute Order, *Hutan v. Islamic Republic of Iran*, No. 25-cv-837 (D.D.C. Apr. 16, 2026); Order, *John Farshid Doe v. Islamic Revolutionary Guard Corps*, No. 26-cv-334, ECF No. 10 (D.D.C. June 9, 2026). For the reasons stated herein, the Court declines to follow those cases.

[4] Plaintiff in this case is represented by the same counsel as in *Doe*. The only difference in the records is that the Plaintiff in this case also submitted correspondence with the U.S. Department of State dated September 3, 2026, concerning updates on the availability of service under Section 1608(a)(4). *See* ECF No. 8-2 at 2–3. This addition does not alter the Court's analysis here.

that 'IRGC has abandoned its role as a paramilitary organization in favor of becoming a primarily commercial entity.'" *Doe*, 2026 WL 2755470, at *2 (citing *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d 181, 200 (D.D.C. 2008). Citing an exhibit discussing the IRGC's increasing role in Iran's military operations and decision-making, the Court there concluded that "[i]f anything, IRGC appears to be performing more governmental functions than ever." *Id.*; *see* ECF 10-1 at 2 ("Following the death of Supreme Leader Ali Khamenei in a U.S.-Israeli airstrike over the weekend, the IRGC has emerged as a potential source of new leadership. It's also carrying out Iran's military response to U.S. attacks by firing missiles at commercial vessels in the Strait of Hormuz . . . ."). Having reviewed the record in this case, this Court reaches the same conclusion. Thus, as the IRGC is properly considered the foreign state for FSIA purposes, service of process is governed by Section 1608(a).

**B. Alternative Service Under Section 1608(a)**

Section 1608(a) "prescribes four methods of service, in descending order of preference." *Holladay*, 406 F. Supp. 3d at 61 (quoting *Ben-Rafael v. Islamic Republic of Iran*, 540 F. Supp. 2d 39, 52 (D.D.C. 2008)). It requires a plaintiff to "attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Id.* (quoting *Ben-Rafael*, 540 F. Supp. 2d at 532). The provision provides that a party must serve a foreign state or political subdivision

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation

> of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a). "'[S]trict adherence to the terms of § 1608(a) is required,' and 'neither substantial compliance, nor actual notice' suffices." *Przewozman*, 628 F. Supp. 3d at 314 (citation modified) (first quoting *Transaero*, 30 F.3d at 154; and then quoting *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015)).

Plaintiff's request for service by email must be denied for several reasons. First, it appears from the record that Plaintiff did not attempt service under any of the methods required by Section 1608(a) before seeking an alternative. While it is well-established that the first two methods of service are unavailable because "[n]o 'special arrangement' governs service between the United States and Iran, nor is the country party to an international convention on service of judicial documents," *Przewozman*, 628 F. Supp. 3d at 314–15 (quoting *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 78 (D.D.C. 2017), "it cannot be said that section 1608(a)(3) is a categorically 'unavailable' method for serving Iran," as "it has long been clear from this district's case law that Iran accepts service through the procedures laid out in section 1608(a)(3) with some frequency." *Azadeh v. Gov't of Islamic Republic of Iran*, 318 F. Supp. 3d 90, 99 (D.D.C. 2018). True, the current conflict with Iran is a clear obstacle to effecting service by mail under Section 1608(a)(3),

*see* ECF Nos. 7-2 through 7-5 (screenshots suggesting USPS, DHL, and UPS are not delivering to Iran), but "difficulty and the prospect of failure does not excuse [Plaintiff] from trying" by that method. *Doe*, 2026 WL 2755470, at *3; *see also Estate of Hirshfeld v. Islamic Republic of Iran*, 235 F. Supp. 3d 45, 47 (D.D.C. 2017) ("The exclusive manner to demonstrate that service cannot be effected within thirty days under § 1608(a)(3) is to attempt such service."); Order Denying Mot. for Alt. Service at 3–4 & n.2, *Unicon Lmtd. v. Islamic Republic of Afghanistan,* 25-cv-4083 (D.D.C. July 31, 2026), ECF No. 7 (rejecting the plaintiff's reliance on screenshots from USPS and FedEx to show impossibility of service under § 1608(a)(3)).

Although "[t]he Court recognizes that 'enforcing compliance' with the letter of § 1608(a)(3) may seem like an 'empty formality,'. . . in cases 'with sensitive diplomatic implications,' such as FSIA suits against foreign sovereigns, 'the rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction.'" *Doe*, 2026 WL 2755470, at *3 (citing *Republic of Sudan v. Harrison*, 587 U.S. 1, 18–19 (2019)). More, as another judge of this Court has observed, Section 1608(a)(3) "authorizes service by 'any form of mail requiring a signed receipt'—not just U.S.-based carriers." *Doe*, 2026 WL 2755470, at *3 (emphasis omitted) (quoting Minute Order, *A.A. v. Islamic Republic of Iran*, No. 25-cv-3671 (D.D.C. Jan. 21, 2026)). So, while U.S. mail services may not be delivering to Iran during the present conflict, there has been no showing that other international-based mail carriers are incapable of delivery to Iran at this time. *See* Minute Order, *A.A. v. Islamic Republic of Iran*, 25-cv-3671 (D.D.C. Jan. 21, 2026) (authorizing service on Iran and IRGC via a "Europe-based mail carrier ... capable of providing registered mail with return receipt" instead of a "U.S.-based mail carrier, which has refused to ship documents to Iran"). Thus, because Plaintiff has not met his "obligation to at least try to serve Defendants under [Section 1608(a)(3)] for a period of

thirty days prior to pursuing the method of service laid out in section 1608(a)(4)," his motion for an alternate method of service will be denied. *Azadeh*, 318 F. Supp. 3d at 99.

Plaintiff's motion must also be denied for another reason: Section 1608(a) does not allow for email service. Federal Rule of Procedure 4 mandates that parties seeking to serve a "foreign state" must do so "in accordance with 28 U.S.C. § 1608." Fed. R. Civ. P. 4(j)(1). "Section 1608(a), in turn, 'sets forth the exclusive procedures for service on a foreign state,' and 'strict adherence' to those terms is mandatory." *Doe*, 2026 WL 2755470, at *3 (citing *Transaero*, 30 F.3 at 154); *see also Doe I v. State of Israel,* 400 F. Supp. 2d 86, 101 (D.D.C. 2005) (the four "methods set forth in § 1608(a) are the sole channels through which service may properly be effected on a foreign sovereign"). And courts have repeatedly found that email service is unavailable under Section 1608(a)—a conclusion that is hardly surprising given it makes no mention of electronic service.[5] *See Doe v. Fed. Republic of Germany*, No. 23-cv-6395, 2023 WL 6785813, at *9 (S.D.N.Y. Oct. 13, 2023) (collecting cases). Just as important, Congress expressly provided for alternate service by court order in Section 1608(b) that otherwise complies with due process for agencies or instrumentalities of a foreign state, but included no such alternative in Section 1608(a) for service on foreign states or their political subdivisions. *Cf.* 18 U.S.C. § 1608(b)(3)(C) (allowing that if service cannot be made under Section 1608(b)(1) and (2), and "if reasonably calculated to give actual notice," service may be made, among other methods, "as directed by order of the court consistent with the law of the place where service is to be made") *with* 18 U.S.C. § 1608(a) (including no such flexibility in the event the methods of service permitted under Section 1608(a)(1)–(4) are unavailable). The best reading of the statute is that Congress' omission in

[5] The Court is aware that another judge of this Court has recently allowed email service against the Iran and the IRGC under Section 1608(a). *See Mahvi v. Islamic Republic of Iran*, Minute Order, 25-cv-59 (D.D.C. June 18, 2026); *Doe v. Islamic Republic of Iran*, Minute Order, 26-cv-2507 (D.D.C. Aug. 31, 2026). For the reasons stated herein, the Court declines to take that approach.

Section 1608(a) of alternative, court-ordered methods of service was intentional and not a mistake. *See Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) (noting that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another."). Therefore, the Court will not permit by court order what Congress omitted from Section 1608(a) as part of its carefully-crafted statutory scheme to balance the many sensitive interests raised by claims in U.S. courts against foreign sovereigns. *See Lovati v. Bolivarian Republic of Venezuela*, Nos. 19-cv-4793, 19-cv-4796, 2020 WL 6647423, at *3 (S.D.N.Y. Nov. 11, 2020) (declining to read Section 1608(a) as allowing alternative service because Section 1608(b) provides for service by court order, while that language is "conspicuously absent" in 1608(a)).

Plaintiff argues that denying alternative service raises its own due process concerns by effectively extinguishing his claim for relief due to circumstances beyond his control. ECF No. 7 at 27–32. This argument misstates Plaintiff's situation. Far from being penalized for not following a statute's seemingly impossible requirements, Plaintiff has not yet even *begun* to pursue service through the methods required by Section 1608(a), and thus has not yet established that this litigation cannot proceed or that compliance with 1608(a)'s procedures is out of his hands. Even if Plaintiff is unable to effect service under Section 1608(a)(3) or 1608(a)(4) at this time because of the present conflict with Iran, Plaintiff is free to renew his efforts to effect service through the U.S. Department of State and the Swiss Embassy if and when the Swiss Embassy resumes serving Iran under Section 1608(a)(4). *See Dehnoushi*, 2026 WL 1786419, at *2.

## II. CONCLUSION

For the foregoing reasons, Plaintiff's motion for alternative service, ECF No. 7, is **DENIED**.

Date: October 28, 2026

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE